**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **WILLIAM BURKE,** | Case No. 2:19-cv-02006-MHW-EPD |
| Plaintiff, | Hon. Michael H. Watson |
| v. | Mag. Elizabeth A. Preston Deavers |
| **JAMES ALEX FIELDS JR., ET AL.,** | |
| Defendants. | |

**DEFENDANT DAVID DUKE'S THIRD MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P. 12(B)(2)**

NOW COMES Defendant David Duke ("Duke"), by and through Attorney Kyle J. Bristow and Attorney Bryan A. Reo, and hereby propounds upon the Parties of the instant civil action and this Honorable Court Defendant David Duke's Third Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(B)(2):

1.  The Court lacks personal jurisdiction over Duke and the case should therefore be dismissed against Duke in accordance with Fed. R. Civ. P. 12(b)(2) for the reasons set forth in the attached Brief.

WHEREFORE, Duke prays that this Honorable Court will dismiss the instant civil action against Duke.

Respectfully submitted,

**REO LAW, LLC**


/s/ Bryan A. Reo_____
Bryan A. Reo, Esq.
P.O. Box 5100
Mentor, OH 44061
(T):  (216) 505-0811
(E):  reo@reolaw.org
Ohio Law License - #0097470

Dated:  January 8, 2020                    *Lead Trial Attorney for David Duke*

**BRISTOW LAW, PLLC**


/s/ Kyle J. Bristow_____
Kyle J. Bristow, Esq.
P.O. Box 381164
Clinton Twp., MI 48038
(T):  (248) 838-9934
(F):  (586) 408-6384
(E):  bristowlaw@gmail.com
Michigan Law License - P77200
Ohio Law License - #0089543

Dated:  January 8, 2020                    *Co-Counsel for David Duke*

2

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **WILLIAM BURKE,** | Case No. 2:19-cv-02006-MHW-EPD |
| Plaintiff, | Hon. Michael H. Watson |
| v. | Mag. Elizabeth A. Preston Deavers |
| **JAMES ALEX FIELDS JR., ET AL.,** | |
| Defendants. | |

## DEFENDANT DAVID DUKE'S BRIEF IN SUPPORT OF HIS THIRD MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(2)

# TABLE OF CONTENTS

I.  INDEX OF AUTHORITIES ............................................................................................ 2

II.  CONCISE STATEMENT OF ISSUES PRESENTED .............................................. 4

III.  STATEMENT OF FACTS ........................................................................................... 4

IV.  LAW & ARGUMENT ................................................................................................. 7

    A.  PLAINTIFF'S CLAIMS AGAINST DUKE MUST BE DISMISSED PURSUANT
    TO FED. R. CIV. P. 12(B)(2) ......................................................................................... 7

       1.  STANDARD OF REVIEW .................................................................................. 7

       2.  PRINCIPAL POINT OF ARGUMENT ............................................................ 8

V.  CONCLUSION ........................................................................................................... 15

# I.  INDEX OF AUTHORITIES

**CASE LAW**

*Air Prod. & Controls, Inc. v. Safetech, Int'l, Inc.*, 503 F.3d 544 (6th Cir. 2007)................7

*Ammon v. Kaplow*, 468 F. Supp. 1304 (D. Kan. 1979) ......................................14

*Beydoun v. Wataniya Restaurants Holding, Q.S.C.*, 768 F.3d 499 (6th Cir. 2014)............11

*Binion v. O'Neal*, 95 F.Supp.3d 1055 (E.D. Mich. 2015) ........................................7, 10-11

*Burger King v. Rudzewicz*, 471 U.S. 462 (1985) ................................................10

*CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir. 1996)...........................................10

*Conn. v. Zakharov*, 667 F.3d 705 (6th Cir. 2012)..................................................8

*Dean v. Motel 6 Operating, L.P.*, 134 F.3d 1269 (6th Cir. 1998)........................................7

*Dixon v. Mack*, 507 F.Supp. 345 (S.D.N.Y. 1980) ..............................................14

*Estate of Thompson*, 545 F.3d 357 (6th Cir. 2008)................................................8

*Gemini Enters. v. WFMY Television Corp.*, 470 F. Supp. 559 (M.D.N.C. 1979) .............14

*Grove Press, Inc. v. Angleton*, 649 F.2d 121 (2nd Cir. 1981)...............................................14

*Intera Corp. v. Henderson*, 428 F.3d 605 (6th Cir. 2005) ................................................10

*J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011) ................................................10

*Leasco Data Processing Equipment Corp. v. Maxwell*, 468 F.2d 1326 (2nd Cir. 1972)................................................................................13-14

*Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675 (6th Cir. 2012) ........................................8

*Nationwide Mut. Ins. Co. v. Tryg Int'l. Ins. Co.*, 91 F.3d 790 (6th Cir. 1996) ....................8

*Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883 (6th Cir. 2002).....................7, 10

*Schneider v. Hardesty*, 699 F.3d 693 (6th Cir. 2012) ...........................................8

*Socialist Workers Party v. Attorney General*, 375 F. Supp. 318 (S.D.N.Y. 1974)............13

*So. Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374 (6th Cir. 1968) ...................10

2

*Tanya Gersh v. Andrew Anglin*, No. CV 17-50-M-DLC-JCL (D. Mont. March 21, 2018) .............................................................................................................5

*Theunissen v. Matthews*, 935 F.2d 1454 (6th Cir. 1991) ......................................8

*Turner v. Baxley*, 354 F. Supp. 963 (D. Vt. 1972) ......................................13-14

*Vangheluwe v. GOT News, LLC*, 365 F.Supp.3d 850 (E.D. Mich. 2019) .......................12

*Walden v. Fiore*, 571 U.S. 277 (2014) ...........................................................12

*Weinstein v. Norman M. Morris Corp.*, 432 F. Supp. 337 (E.D. Mich. 1977) ................14

## STATUTORY LAW

O.R.C. § 2307.382 ...........................................................................................8

## CONSTITUTIONAL LAW

Fourteenth Amendment to the United States Constitution ...........................................8, 10

## COURT RULES

Fed. R. Civ. P. 12(b)(2).............................................................................4, 6-7, 15

## MISCELLANEOUS

Aaron Sankin, *Where in the world is America's leading neo-Nazi troll?* Reveal. 27 July 2017.....................................................................................................5

Ann Althouse, *The Use of Conspiracy Theory to Establish In Personam Jurisdiction: A Due Process Analysis*, 52 Fordham L. Rev. 234 (1983)....................12

Michael Kunzelman, *Neo-Nazi who claims Nigeria as home gets warning from judge.* The Philadelphia Tribune. 2 January 2018 ....................................................6

Nellie Bowles, *To Sue Founder of Daily Stormer, a Neo-Nazi Site, First He Must Be Found.* New York Times. 20 August 2017...........................................................5

3

## II.  CONCISE STATEMENT OF ISSUES PRESENTED

1.  Whether the Court should dismiss the instant civil action against Defendant David Duke ("Duke") pursuant to Fed. R. Civ. P. 12(b)(2) on the basis that the Court lacks personal jurisdiction over him.

> Plaintiff's Anticipated Response:      "No."
>
> Duke's Response:                            "Yes."

## III.  STATEMENT OF FACTS

On August 12, 2017, people of various far-right political persuasions rallied in Charlottesville, Virginia, in what has been dubbed the "Unite the Right" rally.  (Dkt. 57, PageId. 550, ¶ 4).  During the rally, James Alex Fields, Jr., drove a car into protesters of various far-left political persuasions, and Plaintiff was allegedly injured therefor.  (Dkt. 57, PageId. 549, ¶ 2).  Duke is alleged by Plaintiff to have participated in the Unite the Right rally.  (Dkt. 57, PageId. 563, ¶ 51; PageId. 558, ¶ 26; PageId. 574, ¶ 93).

Plaintiff is a resident and domiciliary of Athens, Ohio.  (Dkt. 57, PageId. 549, ¶ 2).

Duke is a resident and domiciliary of Louisiana.  (Dkt. 27, PageId. 304-306[1]).  Duke does not have an interest in, use, or possess real property in Ohio.  (Dkt. 27, PageId. 304-306).  Duke did not purposefully transact any business in Ohio in relation to the Unite the Right rally.  (Dkt. 27, PageId. 304-306).  Duke did not purposefully cause tortious injury by an act of commission or omission in Ohio in relation to the Unite the Right rally.  (Dkt. 27, PageId. 304-306).  Duke does not regularly engage in or solicit business in a persistent course of conduct in Ohio.  (Dkt. 27, PageId. 304-306).  When Duke attended the Unite the Right rally in Virginia, he did so without reasonably expecting to be sued in Ohio.  (Dkt. 27, PageId. 304-306).  Duke did not purposefully network with people known to Duke to be in Ohio in preparation for the Unite the Right rally.

---

[1] Dkt. 27, PageId. 304-306 is a sworn declaration from Duke.

(Dkt. 27, PageId. 304-306).  Duke did not purposefully direct his conduct in any way whatsoever towards Ohio in relation to the Unite the Right rally.  (Dkt. 27, PageId. 304-306).  Prior to Plaintiff suing Duke, Duke had never even heard of Plaintiff and Duke did not know that Plaintiff was a resident of Ohio.  (Dkt. 27, PageId. 304-306).  Duke disavows violence and did not act in a manner with anyone so as to promote injury to anyone in Ohio in relation to the Unite the Right rally.  (Dkt. 27, PageId. 304-306).

Plaintiff alleges that Duke has contacts in Ohio via Duke's relationship with Andrew Anglin ("Anglin") of *The Daily Stormer* website.  (Dkt. 57, PageId. 551, ¶ 10; PageId. 585-590).  This is meritless because Anglin's whereabouts are unknown.[2]  See Aaron Sankin, *Where in the world is America's leading neo-Nazi troll?*  Reveal.  27 July 2017, available online at <https://www.revealnews.org/blog/where-in-the-world-is-americas-leading-neo-nazi-troll/>;  see also Nellie Bowles, *To Sue Founder of Daily Stormer, a Neo-Nazi Site, First He Must Be Found*.  New York Times.  20 August 2017, available online at <https://www.nytimes.com/2017/08/20/technology/theyre-trying-to-sue-a-white-supremacist-first-he-must-be-found.html>.

In *Tanya Gersh v. Andrew Anglin*, No. CV 17-50-M-DLC-JCL (D. Mont. March 21, 2018), there is discussion about whether Anglin has recently been domiciled in the Philippines, Greece, and Cambodia—and the *Gersh* court's opinion notes that Anglin had submitted a declaration that he is no longer domiciled in Ohio:  "Anglin states he left Ohio permanently and established a new domicile in the Philippines[.]"  (Dkt. 38, PageId. 392-399).

Anglin's sworn declaration pertinently provides:

---

[2] The Court is encouraged to take judicial notice of the Court's file which provides that Plaintiff has yet to effectuate service of process upon Anglin—a defendant in the case at bar—in Ohio.

7. Before 2010, I left the State of Ohio, with no intent to live there permanently ever again.

8. Since before 2010, I spent very short amounts of time in Ohio, not more than three visits to my recollection, once for a few weeks and once less than a year.

* * *

10. I left Ohio, and the United States, for the last time on July 3-4, 2013, and I have not returned since.

* * *

13. I do not maintain any residence in the State of Ohio, whether by lease, license, or otherwise.

(Exhibit A – Declaration of Andrew Anglin).

Plaintiff's allegation that Duke had contact with Ohio is thus based upon the conclusory, factually-unsupported assumption that Anglin—an international political thought-criminal of mystery—is located in said state.  Insofar as Anglin has previously publicly represented that he resides in Nigeria and has always denied being a resident of Ohio, Plaintiff has a stronger argument—as ridiculous as it may be—that Duke can be sued in that African country than Duke can be in Ohio.  See Michael Kunzelman, *Neo-Nazi who claims Nigeria as home gets warning from judge.*  The Philadelphia Tribune.  2 January 2018, available online at <https://www.phillytrib.com/news/neo-nazi-who-claims-nigeria-as-home-gets-warning-from/article_e14941cc-b571-5751-b295-db29491af6fb.html>.  (Dkt. 38, PageId. 387-391).

On May 17, 2019, Plaintiff filed Plaintiff's Complaint against Duke and over two thousand other named and unnamed defendants.  (Dkt. 1, PageId. 2, ¶ 1).  On August 19, 2019, Duke filed Defendant David Duke's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6).  (Dkt. 16, PageId. 179-204).  In response to said Motion, Plaintiff filed Plaintiff's First Amended Complaint on September 9, 2019.  (Dkt. 25, PageId. 226-285).  On September 10, 2019, Duke

6

filed Defendant David Duke's Second Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2).

(Dkt. 27, PageId. 289-307). In response to said Motion, Plaintiff filed Plaintiff's Response to

Defendant David Duke's Second Motion to Dismiss on October 8, 2019. (Dkt. 37, PageId. 342-

352). On October 9, 2019, Duke filed Defendant David Duke's Reply Brief in Support of his

Second Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2). (Dkt. 38, PageId. 353-400). On

January 7, 2020, Magistrate Elizabeth A. Preston Deavers ordered the filing of Plaintiff's Second

Amended Complaint. (Dkt. 56, PageId. 546-547; Dkt. 57, PageId. 548-599).[3]

For the reasons set forth *infra*, the Court lacks personal jurisdiction over Duke.

## IV. LAW & ARGUMENT

### A. PLAINTIFF'S CLAIMS AGAINST DUKE MUST BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(B)(2)

#### 1. STANDARD OF REVIEW

As was succinctly articulated in *Binion v. O'Neal*, 95 F.Supp.3d 1055 (E.D. Mich. 2015),

concerning the standard of review for a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2):

> A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) tests the court's personal jurisdiction over the defendant. The plaintiff bears the burden of establishing that personal jurisdiction exists. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). The Sixth Circuit has clearly outlined the procedure for determining personal jurisdiction in Fed.R.Civ.P. 12(b)(2) challenges. *Dean v. Motel 6 Operating, L.P.*, 134 F.3d 1269, 1271-72 (6th Cir. 1998). When considering a motion under Rule 12(b)(2), a court has three choices: (1) rule on the motion based on the affidavits submitted by the parties, (2) permit discovery in aid of the motion, or (3) conduct an evidentiary hearing on the merits of the motion. *See Dean*, 134 F.3d at 1272. When a court rules on a 12(b)(2) motion to dismiss without an evidentiary hearing, the complaint and affidavits are considered in a light most favorable to the plaintiff. *Id.*

---

[3] Duke hereby incorporates by reference as if everything is set forth herein all arguments contained in and exhibits attached to Defendant David Duke's Second Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) and Defendant David Duke's Reply Brief in Support of his Second Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2). (Dkt. 27, PageId. 289-307; Dkt. 38, PageId. 353-400).

*Binion*, 95 F.Supp.3d at 1058. See also *Air Prod. & Controls, Inc. v. Safetech, Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007).

"In diversity cases, federal courts apply the law of the forum state to determine whether personal jurisdiction exists." *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 678 (6th Cir. 2012) (quoting *Nationwide Mut. Ins. Co. v. Tryg Int'l. Ins. Co.*, 91 F.3d 790, 793 (6th Cir. 1996)). "In response to a motion to dismiss, the plaintiff may not stand on his pleadings, but must show the specific facts demonstrating that the court has jurisdiction." *Miller*, 694 F.3d at 678 (citing *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)).

## 2. PRINCIPAL POINT OF ARGUMENT

The Court does not enjoy personal jurisdiction over Duke, who is a resident and domiciliary of Louisiana and who lacks minimum contacts with Ohio. (Dkt. 27, PageId. 304-306).

Ohio's jurisdictional "long-arm" statute is "not coterminous with federal constitutional limits. Thus, 'to establish a prima facie case of personal jurisdiction, a plaintiff must demonstrate that (1) Ohio's long-arm statute has been satisfied and (2) exercising jurisdiction would comport with the Due Process Clause of the Fourteenth Amendment." *Schneider v. Hardesty*, 699 F.3d 693, 700 (6th Cir. 2012) (quoting *Estate of Thompson*, 545 F.3d 357, 361 (6th Cir. 2008)).

Under Ohio law, "a court may exercise personal jurisdiction over a non-resident only if specific jurisdiction can be found under one of the enumerated bases in Ohio's long-arm statute." *Conn. v. Zakharov*, 667 F.3d 705, 717-18 (6th Cir. 2012). Ohio's long-arm statute is O.R.C. § 2307.382, which states:

> (A)  A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>
>> (1)  Transacting any business in this state;
>>
>> (2)  Contracting to supply services or goods in this state;

(3)     Causing tortious injury by an act or omission in this state;

(4)     Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(5)     Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he might reasonably have expected such person to use, consume, or be affected by the goods in this state, provided that he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(6)     Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state;

(7)     Causing tortious injury to any person by a criminal act, any element of which takes place in this state, which he commits or in the commission of which he is guilty of complicity.

(8)     Having an interest in, using, or possessing real property in this state;

(9)     Contracting to insure any person, property, or risk located within this state at the time of contracting.

* * *

(C)     When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him.

In the instant case, not a single basis under Ohio's long-arm statute exists for the Court to be permitted to exercise jurisdiction over Duke; to wit:  (1) Duke does not transact business in Ohio which is related to Plaintiff's causes of action against Duke; (2) Duke did not contract to supply services or goods to Plaintiff which give rise to Plaintiff's claims against Duke; (3) Duke

did not cause tortious injury to Plaintiff while Duke was in Ohio; (4) Duke does not regularly

engage in or solicit business in Ohio; (5) Duke did not breach a warranty made by Duke to Plaintiff;

(6) Duke did not engage in misconduct that was committed with the purpose of injuring Plaintiff

in Ohio; (7) Duke did not engage in a conspiracy concerning Ohio; (8) Duke does not have real

property in Ohio; and (8) Duke did not enter into an insurance contract of any kind in Ohio. (Dkt.

27, PageId. 304-306).

Notwithstanding Ohio's long-arm statute not affording the Court personal jurisdiction over

Duke, the Court also lacks personal jurisdiction over Duke due to the Due Process Clause of the

Fourteenth Amendment to the United States Constitution. As was articulated about this in *Binion*,

> "A federal court's exercise of personal jurisdiction in a diversity of citizenship case
> must be both (1) authorized by the law of the state in which it sits, and (2) in
> accordance with the Due Process Clause of the Fourteenth Amendment." *Neogen
> Corp.*, 282 F.3d at 888 (citation omitted).
>
> * * *
>
> The court's jurisdiction comports with due process "when defendant has sufficient
> minimum contacts such that traditional notions of fair play and substantial justice
> are not offended." *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005).
> The Sixth Circuit uses a three-part test in determining whether, consistent with due
> process, a court may exercise limited personal jurisdiction: (1) the defendant must
> purposefully avail himself of the privilege of acting in the forum state or causing a
> consequence to occur there; (2) the cause of action must arise from the defendant's
> activities in the forum state; and (3) the defendant's acts or the consequences caused
> by the defendant must have a substantial enough connection with the forum state to
> make the exercise of jurisdiction over him reasonable. *So. Machine Co. v. Mohasco
> Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). There is an inference that the
> exercise of jurisdiction is reasonable where the first two elements have been
> satisfied. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1268 (6th Cir. 1996).
>
> To establish purposeful availment, the defendant must perform some act whereby
> the defendant purposefully avails himself of the privilege of doing business in the
> forum state. *Burger King v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85
> L.Ed.2d 528 (1985). There must be a substantial connection between the
> defendant's conduct and the state such that the defendant "should reasonably
> anticipate being hauled into court there." *Id*. at 474. As the Supreme Court recently
> stated, "[t]he principal inquiry in cases of this sort is whether the defendant's

activities manifest an intention to submit to the power of a sovereign." *J. McIntyre Mach., Ltd. v. Nicastro*, [564 U.S. 873,] 131 S.Ct. 2780, 2783, 180 L.Ed.2d 765 (2011).

*Binion*, 95 F.Supp.3d at 1059-60.

In the instant case, Duke does not have sufficient minimum contacts with Ohio such that the traditional notions of fair and play substantial justice would not be offended for Duke to be sued in Ohio.  Duke resides in Louisiana and attended the Unite the Right rally in Virginia—suing Duke in Ohio just because Plaintiff resides in Ohio and some of the other rallygoers happen to allegedly be affiliated with Ohio to varying degrees is insufficient for Duke to be hauled into court in Ohio.

Simply said, Duke did not purposefully avail himself of the privilege of acting in Ohio or causing a consequence to occur in Ohio, Plaintiff's claims against Duke arise from Duke's activities in Louisiana and/or Virginia—not Ohio—, and Duke's alleged acts or the consequences caused by Duke's alleged acts do not have a substantial connection with Ohio to make the exercise of jurisdiction over Duke in Ohio whatsoever reasonable.  (Dkt. 27, PageId. 304-306).

In *Beydoun v. Wataniya Restaurants Holding, Q.S.C.*, 768 F.3d 499, 508 (6th Cir. 2014), it was noted that "[T]he Supreme Court has emphasized that only consequences that proximately result from a party's contacts with a forum state will give rise to jurisdiction."  In the instant case, the Unite the Right rally occurred in Virginia and Plaintiff's alleged original injuries occurred in Virginia during said rally.  No actionable act of commission or omission of Duke—much less "purposeful availment"—took place in Ohio.

It should be noted that Plaintiff alleges that this Court enjoys personal jurisdiction over Duke because the defendants allegedly used telecommunications devices which are accessible in

Ohio. (Dkt. 57, PageId. 551, ¶¶ 8-9, 11). This, however, does not constitute minimum contacts sufficient for the Court to constitutionally enjoy personal jurisdiction over Duke.

In *Vangheluwe v. GOT News, LLC*, 365 F.Supp.3d 850 (E.D. Mich. 2019), the trial court dealt—in a case of first impression in the context of doxxing—with the issue of to what extent minimum contacts can be said to exist in the context of defendants using telecommunications devices to post commentary online about the Unite the Right rally. The *Vangheluwe* court noted that the Internet user's "conduct must have involved the plaintiff's state in some additional way" in order for minimum contacts to exist. *Id.* at 857-858. Quoting *Walden v. Fiore*, 571 U.S. 277 (2014), the *Vangheluwe* court noted that "mere injury to a forum resident is not a sufficient connection to the forum." *Id.* at 858.

In the instant case, Duke's involvement in the Unite the Right rally lacks an Ohio focus. See *Vangheluwe*, 365 F.Supp.3d at 864 (noting that the allegedly tortious conduct of a defendant who resides in Wisconsin lacked a "Michigan focus" for the defendant to be sued in Michigan).

The gist of Plaintiff's theory as to why Duke—a resident of Louisiana—can be sued in Ohio for what happened during the "Unite the Right" rally—which occurred in Virginia—is that Duke allegedly acted in a conspiracy with people who happened to be residents of Ohio. (Dkt. 57, PageId. 551, ¶ 10). By this flawed logic, Duke could—in theory—be sued anywhere on the planet so long as a participant of the Unite the Right rally happed to reside there—and this would be irrespective of whether or not Duke in fact directed his alleged contacts of a tortious nature to that venue or irrespective of whether or not the controversy even focused on that venue.

There is an excellent treatise concerning long-arm personal jurisdiction existing—or not existing—when conspiracies are alleged to be present: Ann Althouse, *The Use of Conspiracy Theory to Establish In Personam Jurisdiction: A Due Process Analysis*, 52 Fordham L. Rev. 234

(1983), available online at <https://ir.lawnet.fordham.edu/cgi/viewcontent.cgi?article=2563&context=flr>. (Dkt. 38, PageId. 358-386). The following tidbits of this Brief come from said treatise.

In *Leasco Data Processing Equipment Corp. v. Maxwell*, 468 F.2d 1326 (2nd Cir. 1972), it was noted that "the mere presence [in the forum] of one conspirator * * * does not confer personal jurisdiction over another alleged conspirator." In *Turner v. Baxley*, 354 F. Supp. 963, 977 (D. Vt. 1972), it was observed that an act in furtherance of a conspiracy is alone insufficient to establish personal jurisdiction over an out-pf-state conspirator.

Furthermore, in *Socialist Workers Party v. Attorney General*, 375 F. Supp. 318, 321-322 (S.D.N.Y. 1974), the plaintiffs sought to base jurisdiction on one act, which was committed in the forum and attributed to the defendants only through the allegation of conspiracy. The *Socialist Workers Party* court held that the alleged facts did not adequately "connect" the out-of-state defendants with the forum state. *Id.* at 322. The *Socialist Workers Party* court further held that because the attempt to connect the defendants to the act in the state "was based on nothing but speculation," it was unfair to subject the foreign defendants to the burdens of discovery and other pretrial proceedings. *Id.* at 325.

As was noted in the above-referenced law review article, "Most courts have parroted *Leasco* in stating that the mere presence of a co-conspirator in the forum state does not confer jurisdiction, but like the court in *Socialist Workers Party*, have assumed that the conspirator theory is available in appropriate cases." 52 Fordham L. Rev. at 242. (Citations omitted.) Said law review article further notes,

> At a minimum, most courts require a plaintiff to allege facts which, if proven, show: 1) that a conspiracy existed; 2) that the defendant over whom jurisdiction is sought became a member of the conspiracy; and 3) that a co-conspirator committed an act—or a "substantial act"—in furtherance of the conspiracy in the forum state.

13

> Some courts condense this tripartite test into the requirement that the defendant have some "connection"—or "substantial connection"—to the alleged contact with the forum state.

*Id*. at 243-244. (Citations omitted.)

In the instant case, no act—much less a substantial act—is alleged by Plaintiff to have occurred in Ohio by any of the conspirators insofar as the focus of the alleged conspiracy—and Plaintiff's alleged injuries—is located in Charlottesville, Virginia. Furthermore, Duke has no connection—much less a "substantial connection"—with Ohio. (Dkt. 27, PageId. 289-307).

Courts also examine whether the non-resident defendant consented to or directed the act in the forum state and whether the at was done on the non-resident defendant's behalf. See *Grove Press, Inc. v. Angleton*, 649 F.2d 121, 122 (2nd Cir. 1981); *Dixon v. Mack*, 507 F.Supp. 345, 350 (S.D.N.Y. 1980); *Weinstein v. Norman M. Morris Corp.*, 432 F. Supp. 337, 343-44 (E.D. Mich. 1977). In this case, there is no allegation that Duke consented to people in Ohio acting on Duke's behalf—or that a tortious act even in fact occurred in Ohio insofar as the original injury allegedly occurred in Virginia.

Courts also look at whether the non-resident defendant should have reasonably foreseen that the conspiracy would have an effect in the forum state. See *Leasco*, 468 F.2d at 1341 (foreseeability required); *Gemini Enters. v. WFMY Television Corp.*, 470 F. Supp. 559, 564 (M.D.N.C. 1979) ("co-conspirator knew or should have known that acts would be performed in the forum state"); *Ammon v. Kaplow*, 468 F. Supp. 1304, 1312 (D. Kan. 1979) ("foreseeable consequences"). In the instant case, the Unite the Right Rally occurred in Virginia and there is nothing foreseeable about Duke being hauled into court in Ohio in relation to the same.

In *Turner*, 354 F. Supp. at 977, the court considered whether the alleged conspiracy was "directed toward" or "calculated to have an effect in" the forum state; under this analysis, due

process will not permit the plaintiff to use insignificant acts in the forum to assert jurisdiction over all co-conspirators. *Id*. In the instant case, the alleged conspiracy was directed toward and/or calculated to have an effect in Virginia, and any acts that may or may not have occurred in Ohio are insignificant.

## V.  CONCLUSION

For the reasons set forth herein, the Court should dismiss the instant civil action against Duke pursuant to Fed. R. Civ. P. 12(b)(2) on the basis that it does not enjoy personal jurisdiction over him.

Respectfully submitted,

**REO LAW, LLC**


/s/ Bryan A. Reo
Bryan A. Reo, Esq.
P.O. Box 5100
Mentor, OH 44061
(T):  (216) 505-0811
(E):  reo@reolaw.org
Ohio Law License - #0097470

Dated:  January 8, 2020          *Lead Trial Attorney for David Duke*

**BRISTOW LAW, PLLC**


/s/ Kyle J. Bristow
Kyle J. Bristow, Esq.
P.O. Box 381164
Clinton Twp., MI 48038
(T):  (248) 838-9934
(F):  (586) 408-6384
(E):  bristowlaw@gmail.com
Michigan Law License - P77200
Ohio Law License - #0089543

Dated:  January 8, 2020          *Co-Counsel for David Duke*

# <u>EXHIBIT A</u>
# DECLARATION OF ANDREW ANGLIN

DocuSign Envelope ID: 53823FA9-015D-49C0-BF4E-8AD1A585252F9
Case: 2:19-cv-02006-MHW-EPD Doc #: 58 Filed: 01/08/20 Page: 20 of 32 PAGEID #: 619
Case 9:17-cv-00050-DLC-JCL Document 64-1 Filed 01/17/18 Page 1 of 12

Marc J. Randazza (*pro hac vice*)
RANDAZZA LEGAL GROUP, PLLC
4035 S. El Capitan Way
Las Vegas, Nevada 89147
Tel: (702) 420-2001
ecf@randazza.com

Jay M. Wolman (*pro hac vice*)
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, Connecticut 06103
Tel: (702) 420-2001
ecf@randazza.com

Mathew M. Stevenson, St. Bar # 6876
STEVENSON LAW OFFICE
1120 Kensington, Suite B
Missoula, MT 59801
Tel: (406) 721-7000
matstevenson@bigskylegal.com

*Attorneys for Defendant,*
*Andrew Anglin*

# UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA
## MISSOULA DIVISION

| | | |
|---|---|---|
| TANYA GERSH, | ) | Case No. 9:17-cv-50-DLC-JCL |
| Plaintiff, | ) | |
| vs. | ) | **DECLARATION OF** |
| | ) | **ANDREW ANGLIN IN SUPPORT** |
| ANDREW ANGLIN, | ) | **OF MOTION TO DISMISS** |
| Defendant. | ) | |
| | ) | |

DocuSign Envelope ID: 53838EA9-D15D-08D0-BE4C-8ADDA585253

## DECLARATION OF ANDREW ANGLIN
## IN SUPPORT OF MOTION TO DISMISS

I, Andrew B. Anglin, declare:

     1.     I am over 18 years of age and have first-hand knowledge of the facts set forth herein, and if called as a witness could and would testify competently thereto.

     2.     I submit this Declaration in support of the Motion to Dismiss, filed in this matter.

     3.     Upon information and belief, I am the defendant identified in the above-captioned matter.

     4.     I am a natural-born United States citizen and have been so my entire life.  I am a citizen of no other nation.

     5.     I am submitting this Declaration to clarify a misunderstanding that resulted in an error in the memorandum in reply to Plaintiff's opposition to the motion to dismiss.

     6.     Although I maintained a Russian address in October 2016 as set forth in my application for an absentee ballot, I was not a Russian domiciliary.

     7.     Before 2010, I left the State of Ohio, with no intent to live there permanently again.

     8.     Since before 2010, I spent very short amounts of time in Ohio, not more than three visits to my recollection, once for a few weeks and once less than a year.

DocuSign Envelope ID: 53829EA9-0150-080-8E4C8AEDEA5852E0

9.      I renewed my U.S. passport in 2013, so I do not have full and accurate records of my international travel prior to that date.

10.     I left Ohio, and the United States, for the last time on July 3-4, 2013, and I have not returned since.

11.     I was not in the United States on December 10, 2017 and I did not encounter Jeffrey Cremeans or anyone else in a Meijer's grocery store in 2017.

12.     I do not own any real property in the State of Ohio.

13.     I do not maintain any residence in the State of Ohio, whether by lease, license, or otherwise.

14.     I do not own any motor vehicle registered in the State of Ohio.

15.     I hold no professional license issued by the State of Ohio.

16.     I do not pay income taxes to the State of Ohio.

17.     I do not pay consumption or property taxes to the State of Ohio or any county, city, or municipality in the State of Ohio.

18.     I do not carry any form of property or liability insurance produced in the State of Ohio.

19.     I do not have any loans with an Ohio billing address.

20.     I am registered to vote in the State of Ohio, by operation of Federal law, as that was my last domicile prior to leaving the United States.

21.     Before 2010, I took up residency in the Philippines, with the intent to live there permanently.  As I obtained a new passport in 2013, I do not have documentation of my travel to the Philippines.

22.     In 2013, I moved to Greece, with the intent to live there permanently.

DocuSign Envelope ID: 53839EA9-0150-480-9E4-8ADDA585259

23.     Prior to moving to Greece, I traveled to the Consulate General of Greece in Chicago to obtain the requisite visa.  I was advised to enroll in an academic program once I entered Greece in order to obtain the most useful visa.

24.     Rather than enrolling in an academic program, I obtained employment as a tour guide for the Athens International Youth Hostel, located at 16 Viktoros Hugo Street, in Athens, Greece.

25.     At that time, I considered Greece my permanent home, although I traveled to other countries in Europe from time to time.

26.     On April 14, 2017, I moved to the Kingdom of Cambodia, with the intent to live there permanently.

27.     While in Cambodia, I lived at the Damnak Villa Boutique, located at the Old Market Are, Wat Damnak Village, in Siem Reap City.

28.     While in Cambodia, I purchased a motorcycle, which I still own.

29.     I have temporarily left Cambodia, entrusting the care of the motorcycle to an individual at Damnak Villa, with the intent to resume use of the motorcycle upon my return.

30.     In April 2017, when Plaintiff filed her Complaint, my domicile was Cambodia, and I had not re-established a domicile in Ohio or anywhere else in the United States as of April 2017.

31.     Attached hereto as <u>Exhibit A</u> is a true and correct copy of excerpts of my passport evidencing my travel to Greece and Cambodia.

32.     I now currently continue to be domiciled outside of the United States, however, for reasons of personal safety, I cannot publicly file proof of my current whereabouts.

33.     Unlike Plaintiff, who alleges she received specious threats, I regularly receive true threats of injury and death.

34.     For example, the Court may well be aware of the videotaped assault on Richard Spencer and the "punch a Nazi" movement.  As publisher of the Daily Stormer, however, I am targeted for more severe injury, including credible death threats.

35.     Should the Court require, I will make any necessary *in camera* submission.  Although, ordinarily, I would have no objection to an attorneys' eyes only provision of the submission to a plaintiff's attorney, the Southern Poverty Law Center is a biased and untrustworthy entity that has already shown itself to give no regard to the rules of legal ethics, and, upon information and belief, one of whose followers recently shot a sitting Congressman and another who shot a guard at the Family Research Council.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: 1/17/2018                    .

DocuSigned by:

533439F69BC64CD...

Andrew B. Anglin

- 4 -

# **<u>EXHIBIT A</u>**

Passport Excerpts













## CERTIFICATE OF SERVICE

I, Kyle J. Bristow, affirm that I am an attorney of record for a party to the above-captioned civil action, and on January 8, 2020, I electronically filed this document with the Clerk of the Court by using the Court's Electronic Filing System, which should send notification of said filing to all attorneys of record who are registered to receive such electronic service for the instant civil action. Specifically, notice should be served upon Attorney Michael Frandin via electronic mail at <mike@frandinlaw.com>, upon Attorney James E. Kolenich at <jek318@gmail.com>, and upon Attorney Bryan A. Reo at <reo@reolaw.org>.

/s/ Kyle J. Bristow
Kyle J. Bristow, Esq.
P.O. Box 381164
Clinton Twp., MI 48038
(T):  (248) 838-9934
(F):  (586) 408-6384
(E):  bristowlaw@gmail.com
Michigan Law License - P77200
Ohio Law License - #0089543
*Co-Counsel for David Duke*

Dated:  January 8, 2020