LAW OFFICE OF MICHAEL L. FRADIN
Michael L. Fradin, Esq.
8401 Crawford Ave. Ste. 104
Skokie, IL 60076
Telephone: 847-986-5889
Facsimile: 847-673-1228
Email: mike@fradinlaw.com
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO, EASTERN DIVISION

| | |
|---|---|
| WILLIAM BURKE,<br><br>   Plaintiff,<br><br>v.<br><br>ANDREW ANGLIN et. al.<br><br>   Defendants. | Case No. 2:19 cv 2006<br><br><u>PLAINTIFF'S RESPONSE TO DEFENDANT TRADITIONALIST WORKER PARTY'S MOTION TO DISMISS SECOND AMENDED COMPLAINT</u><br><br>Judge: Hon. Michael H. Watson<br><br>Magistrate Elizabeth A. Preston Deavers |

**PLAINTIFF'S RESPONSE TO DEFENDANT TRADITIONALIST WORKER PARTY'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Now comes Plaintiff, Bill Burke, and for his Response to Defendant Traditionalist Worker Party's Motion to Dismiss Plaintiff's Second Amended Complaint (ECF #73), states as follows:

I. **INTRODUCTION**

The Traditionalist Worker Party (TWP) is an Ohio-based neo-Nazi organization that promotes white separatism and white supremacy and was an integral participant in the conspiracy to inflict emotional distress   Second Amend. ¶ 24. In its Motion to Dismiss, TWP makes four arguments, all of which mischaracterize Plaintiff's Complaint and have no merit.

First, TWP argues that Plaintiff's Intentional Infliction of Emotional Distress (IIED) and conspiracy to commit IIED claims are disguised assault and battery and conspiracy to commit battery

claims. However, Plaintiff does not allege that Defendant TWP either battered Plaintiff or that it conspired to batter Plaintiff or that TWP should be held vicariously liable for the actions of James Alex Fields. Rather, Plaintiff's IIED and conspiracy to commit IIED claims are based on TWP's part in a conspiracy to cause Plaintiff and other counter-protestors to experience severe emotional distress.

Second, TWP argues that R.C. 2307.60 is applicable to Plaintiff's negligence claims and shortens the statute of limitations from two years to one. However, Plaintiff's Second Amended Complaint does not include an R.C. 2307.60 claim, either directly or in disguise. R.C. 2407.60 allows for suits to be brought pursuant to the Act Plaintiff simply has not pled an R.C. 2407.60 claim here.

Thirdly, TWP argues that Plaintiff's §1985 claim should be dismissed because TWP cannot conspire with itself. However, Plaintiff does not allege that TWP conspired with itself but instead provides detailed allegations about co-conspirators.

Finally, TWP argues that this is the improper venue. On May 27, 2020, TWP filed a notice submitting to this Court's personal jurisdiction (ECF) #72, yet it now argues that this Court is not improper venue. The Eastern Division is a proper venue, and TWP does not advance any argument as to why it wouldn't or where would be the proper venue.

## II. **LEGAL STANDARD**

Any FRCP 12(B) dismissal is a drastic measure and so the standard for dismissal is a stringent one. "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45 (U.S. 1957). Therefore, the Second Amended Complaint should be construed in the light most favorable to Plaintiff Burke and its allegations taken as true. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

## III. **ARGUMENT**

### PLAINTIFF PLEADS IIED, NOT BATTERY AGAINST TWP

In his Second Amended Complaint, Plaintiff alleges that TWP's outrageous and extreme conduct along with its co-conspirators was intended to and did cause extreme emotional distress to counter-protestors, including Plaintiff. The fact that Plaintiff was ultimately physically injured does not transform Plaintiff's IIED and conspiracy to commit IIED claims to assault and battery claims. TWP confuses the cause of action against it with a cause of action Plaintiff might have against Fields individually. For an analogy, it is like when an employer is sued for negligent hiring in Ohio and is subject to a two year statute of limitations. It does not matter if the negligently hired perpetrator committed a battery with a shorter statute of limitations. *See Grimm v. White*, 435 N.E.2d 1140, 70 Ohio App.2d 201, 24 O.O.3d 257 (Ohio App. 1980).

Here, as in *Grimm*, the claims against TWP are not based on any vicarious liability. Rather, TWP is being sued for the acts that it committed independently and in furtherance of the conspiracy to inflict emotional distress on counter-protestors, and Defendant TWP has not challenged the sufficiency of these allegations and Fields is no longer even a Defendant.

In *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen, & Helpers of America*, 453 N.E.2d 666, 6 Ohio St.3d 369, 374 (Ohio, 1983), the Ohio Supreme Court, citing the Second Restatement of Torts, recognized that Intentional Infliction of Emotional Distress (IIED) may include physical injury. TWP, however, argues that because Plaintiff suffered physical injury, the true nature of his claims against TWP are for assault and battery.

But Plaintiff does not and never did have an assault and battery claim against TWP; Plaintiff cannot disguise his claims into one from that never existed. *Stafford v. Clever Investigations, Inc.*, 2007 Ohio 5086 (Ohio App. 9/27/2007), 2007 Ohio 5086 (Ohio App. 2007), cited by Defendant, is easily distinguishable because, there, the crux of the complaint was the vicarious liability for a tort committed by the Defendant's employee. Here, the crux of the allegations against TWP are the

organizations' outrageous and extreme conspiring, planning, and inciting rather than any vicarious liability for Fields.

Furthermore, Plaintiff is the "master of his complaint" *Carl L. Brown, Inc. v. Lincoln National Life Insurance*, 2003 Ohio 2577 (Ohio App. 2003). Plaintiff sufficiently alleges that the conspiracy's goal was to inflict emotional distress on counter-protestors and that the purpose of the conspiracy was to instill fear and severe emotional distress in counter-protestors. Second Amend. ¶ 195, 202. Defendant does not dispute the sufficiency of these allegations.

TWP cites *Strock v. Pressnell*, 38 Ohio St.3d 207, 527 N.E.2d 1235 (Ohio 1988) to support its argument that the claims made by Plaintiff are battery and conspiracy to commit battery or other crimes in disguise. *Strock*, however, is distinguishable. The *Strock* Plaintiff was the husband of a woman who became sexually involved with the couple's pastor/counselor. Because Ohio has a statute that precludes suits for alienation of affections, the husband/plaintiff in *Strock* attempted to avoid the statute by suing the pastor and the church for malpractice. The *Strock* Court held that the claims that the *Strock* plaintiff was actually making against the pastor all fell under the umbrella of claims that the alienation of affections statute precluded, the claims would all be dismissed against the pastor. Because the pastor did not commit a recognizable tort, the Church was also dismissed.

Here, there is no statute that precludes any of Plaintiff's claims. Plaintiff has not pled his complaint in any way to avoid any statutes that would limit his claims. Here, Plaintiff alleges that the conspiracy was to intimidate, scare, threaten, and terrorize Plaintiff and other counter-protesters and their supporters and the *Sines* Court held that there was a conspiracy to do just that. *Sines v. Kessler*, 324 F. Supp.3d 765 (2018). Although an attack by James Alex Fields did occur, this is not the gravamen of the conspiracy. See *Sines* generally and Plaintiff's Second Amended Complaint, generally. Therefore, TWP's argument is not consistent with the true nature of the conspiracy that

Plaintiff has alleged and that the *Sines* Court has recognized. See *Sines v. Kessler*, 324 F. Supp.3d 765 (2018).

## Plaintiff does not Plead an O.R.C. 2307.60 Cause of Action

TWP's second argument is structurally the same its first. TWP now argues that Plaintiff's negligence claims are actually R.C. 2307.60 claims in disguise. This argument fails not only because Plaintiff has not pled R.C. 2307.60 claims but also because Defendant has cited no authority that R.C. 2307.60 is intended to preempt common law negligence.

Furthermore, Defendant has cited no authority that R.C. 2307.30 was intended to shorten the long established two year statute of limitations for common law negligence claims. *Summers v. Max & Erma's Restaurant, Inc.*, 2008 Ohio 4156 (Ohio App. 8/15/2008), 2008 Ohio 4156 (Ohio App. 2008). Defendant has not argued that Plaintiff has failed to make prima facie negligence or negligence per se claims, only that the claims that are made should be subject to the statute of limitations that some Courts have imposed on R.C. 2307.60.

If R.C. 2307.60 were interpreted consistently with TWP's arguments, any person injured in Ohio would have only one year to file a negligence claim against the at-fault party if the negligent party also committed a crime. For example, a person injured by an intoxicated driver would have only one year to file a common negligence claim against that driver. TWP has cited no authority to support this sort of a radical change to the statute of limitations on negligence claims.

Similar to TWP's argument that the IIED claim is a battery claim in disguise, this is a "straw man" argument. Importantly, not only is R.C. 2307.60 not cited in the Second Amended Complaint, but Plaintiff does not request attorneys' fees in his negligence counts R.C. 2307.60; Plaintiff only seeks attorneys' fees and statutory damages in Count I (Civil RICO) and Count V (42 U.S.C. §1985). *Second Amend.*, *Prayer of Relief* ¶5.

Also, the viability of negligence *per se* claims in Ohio predates the 2002 enactment of O.R.C. 2307.60. See *Chambers v. St. Mary's School*, 697 N.E.2d 198, 82 Ohio St.3d 563 (Ohio, 1998). There is no authority that R.C. 2307.60 was intended to supersede or trump or in any way limit a Plaintiff's ability to plead negligence *per se* as an independent and viable cause of action. Because TWP points to no authority that R.C. 2307.60 replaced negligence *per se*, its statute of limitations arguments must fail.

<u>Plaintiff Alleges that TWP Conspired with Others, Not With Itself</u>

In yet another "straw man" argument, TWP argues that Plaintiff's Second Amended Complaint should be dismissed because there are insufficient allegations that TWP conspired with others and because TWP cannot conspire with itself. However, Plaintiff makes numerous allegations that TWP conspired with others. (Second Amend.). [1] The fact that, with the permission of the

---

[1] ¶3: "Defendants have been engaged together in a concerted effort to intimidate and instill fear to counter-protestors and their allies, from Charlottesville, Virginia to Ohio and beyond, wherever their messages are given a platform," ¶4: "Defendants unlawfully, willfully, and knowingly conspired, confederated, aided and abetted, tacitly and/or expressly agreed to participate, cooperate, and engage in unlawful acts …," ¶5: "Defendants' coordinated campaign to intimidate, harass …" ¶8: "Defendants … in furtherance of a violent, criminal, and terroristic conspiracy," ¶10: Each Defendant to this lawsuit was complicit or in conspiracy with the Traditionalist Worker Party, the Daily Stormer, Andrew Anglin, and/or Gregory Anglin, all of whom, at all relevant times, were residents of the State of Ohio," ¶11: "Each Defendant to this lawsuit participated in or was complicit with the dissemination or transmittal of hateful and/or racist information or data or telecommunications into the State of Ohio, in furtherance of a violent, criminal, and terroristic conspiracy," ¶12: "Each Defendant to this lawsuit has engaged in a conspiracy which led to an Ohioan, James Alex Fields Jr., committing terrorism and violence," ¶18: "Andrew Anglin[,] was a longtime resident of Ohio who conspired with the other Defendants," ¶19: "Gregory Anglin ("Greg Anglin") conspired with the other Defendants, ¶24: "The Traditionalist Worker Party was an organization that sought to promote a racist society and white nationalist state and that conspired in furtherance of outrageous and reckless conduct towards counter-protestors and did incite violence in Charlottesville, Virginia on August 12, 2017, in furtherance of a violent, criminal, and terroristic conspiracy," ¶47: "Defendants and their co-conspirators conspired to incite violence and to threaten, intimidate, harass, and terrorize the civilian population of Charlottesville," ¶50: "Defendants Andrew Anglin, Gregory Anglin, The Traditionalist Worker Party, National Policy Institute, along with Defendant Daily Stormer (Moonbase Holdings, LLC), Morning Star Ministries, Inc., and Anglin & Anglin LLC, through their leadership and members, all agreed and coordinated with and among each other to inflict physical harm and emotional distress on counter-protestors," ¶52: "Defendants also frequently coordinate the illegal acts planned for the Unite the Right rally and event online. They used websites, social media (such as Twitter, Facebook, 4chan, and 8an), chatrooms, radio, videos, and

Discord moderator, TWP members could be tagged on Discord does not mean that TWP members could only communicate with other TWP members or that The Daily Stormer members could only communicate with other Daily Stormer Members. Rather, it demonstrates that TWP and The Daily Stormer were at the center of the conspiracy and that its members were considered so integral to the conspiracy that they were given the option of branching off into private groups.

---

podcasts to communicate with each other, and with their co-conspirators," ¶54: "Defendants and co-conspirators coordinated by posting articles on their own websites, and by using social media to send and share messages for the "rally" and to encourage attendance and the commission of illegal acts. They interviewed one another about the plans for the "rally," and shared those messages on podcasts or other video-streaming services," ¶59: "Defendants and their co-conspirators used Discord for regular "leadership" meetings through which they shared information and plans," ¶63: "Defendants enlisted other co-conspirators to coordinate and organize the "rally," through Discord and other means," ¶76: "Consistent with their conspiracy to encourage and enable violence, Defendants and co-conspirators reinforced a false narrative of a larger—necessarily violent—racial and religious war in which Unite the Right events were a critical moment," ¶81: Defendants gave orders to each other, co-conspirators, and followers in advance of the Unite the Right weekend, including what weapons to bring, what protective armor to wear, and instructions for uniforms, ¶93: Defendants TWP, Duke, and hundreds of Stormers (many of them from Stormer Book Clubs) all participated in the violent events of the day together with an intent to inflict as much emotional harm as possible on counter-protesters, ¶94: one co-conspirator explained: "Me, the rest of TWP and LS [League of the South] have been to more than one rodeo … Jason Kessler promised that there would be hundreds of members of TWP and League of the South at the park as early as 8:00 a.m." ¶137: "All Defendants had an agreement and understanding to engage in, promote, and incite racial, religious, and ethnicity-based harassment and to cause severe emotional distress in counter-protestors." ¶142: "Defendant TWP and "other allies," coordinated their attendance as a "joint operation" in advance of August 12, in order to plan unlawful acts of violence, intimidation, and denial of equal protection at the Unite the Right events," ¶144: "TWP and Moonbase Holdings (through Daily Stormer) had members on the Charlottesville discussion forum on the application named Discord to direct and plan unlawful acts," ¶146: "Using Discord, Defendants and co-conspirators coordinated unlawful acts," ¶195: "Defendants unlawfully, willfully and knowingly conspired, confederated, aided and abetted, tacitly and/or expressly agreed to participate, cooperate, and engage in unlawful and tortious and outrageous acts pursuant to a common course of conduct," ¶196: "Defendants conspired with, encouraged, and agreed to provide material support, funding, sponsorship, aiding and abetting, and/or other material resources to Defendant Fields and other white supremacists and/or white nationalists in furtherance of the conspiracy,"¶200: "Defendants acted in concert and/or agreement to further their common goal of inciting fear in the public," ¶228: "Defendants plotted, coordinated, and executed a common plan to engage in violence and intimidation in the streets of Charlottesville."

7

<u>Venue</u>

Despite submitting to this Court's personal jurisdiction, TWP argues that the Southern District of Ohio, Eastern Division is not the proper venue. However, TWP does not argue which venue would be proper. TWP's undeveloped venue argument is without substance.

Venue is indeed proper in the Southern District of Ohio, Eastern Division because Plaintiff alleges that the conspiracy was centered on communications that were channeled through various business ventures of Andrew Anglin and Gregory Anglin and The Daily Stormer, all operating out of Worthington, Ohio. (Ohio Second Amend.) ¶¶ 16, 18, 20, 22. 23, 41 49, 50, 68, 71, 86, 89, 110, 112. Even if TWP's brief is to be interpreted as arguing that 28 U.S.C. §1391 (b)(2) is not satisfied, then 28 U.S.C. §1391 (b)(3) would apply and any judicial district in which any defendant is subject to the court's personal jurisdiction would be proper.

IV. **<u>CONCLUSION</u>**

For the reasons set forth above, this Court should deny Defendant TWP's Motion to Dismiss.

<u>s/ Michael L. Fradin</u>
Attorney for Plaintiff

LAW OFFICE OF MICHAEL L. FRADIN
Michael L. Fradin, Esq.
8401 Crawford Ave. Ste. 104
Skokie, IL 60076
Telephone: 847-986-5889
Facsimile: 847-673-1228
Email: mike@fradinlaw.com

## CERTIFICATE OF SERVICE

The undersigned certifies that on July 1, 2020, this Response to Defendant Traditionalist Worker Party's Motion to Dismiss Plaintiff's Second Amended Complaint was filed electronically. Notice of this filing will be sent to all parties by operation of the court's electronic filing system. Parties may access this filing through the court's system.

/s/ Michael L. Fradin
Attorney for Plaintiff