UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

William Burke,

    Plaintiff,                       Case No. 2:19-cv-2006

    v.                              Judge Michael H. Watson

Andrew Anglin, *et al.*,          Magistrate Judge Deavers

    Defendants.

ORDER

William Burke ("Plaintiff") sued, *inter alios*, National Policy Institute ("Defendant") in this lawsuit, which stems from the car attack at the Unite the Right rally in Charlottesville, Virginia, in 2017. Am. Compl., ECF No. 57. Plaintiff, who suffered injuries in the attack, sues Defendant under Ohio law for intentional infliction of emotional distress ("IIED"), civil conspiracy to inflict emotional distress, negligence per se, and negligence. *Id.* He also sues Defendant under 42 U.S.C. § 1985(3). *Id.*

Plaintiff served Defendant with a copy of the Second Amended Complaint on February 7, 2020. ECF No. 63. Defendant failed to move or plead in response to the Second Amended Complaint, and the Clerk entered default against Defendant on May 1, 2020, pursuant to Federal Rule of Civil Procedure 55(a). ECF No. 68. Plaintiff now moves for default judgment. ECF No. 86.

As an initial matter, the Court previously dismissed without prejudice each of Plaintiff's state-law causes of action. ECF No. 75. Accordingly, the Court

herein deals only with Plaintiff's federal claim against Defendant. Pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court **GRANTS** Plaintiff's motion and **ENTERS DEFAULT JUDGMENT** against Defendant on Plaintiff's § 1985(3) claim.

The Court held a hearing on April 14, 2021, to determine the extent of Plaintiff's damages and has also considered documents submitted for *in camera* review. Having considered those materials, the Court makes the following findings regarding damages.

### a. Past and Future Medical Expenses

Plaintiff required medical care for a head injury, left knee injury, and a crushed left arm. He was admitted to the emergency room immediately after the attack and was eventually admitted from there to the hospital, where he received care overnight. He was diagnosed with, *inter alia*, a traumatic brain injury, and he required the use of a cane for approximately one month while his knee injury healed. He additionally suffered from lingering headaches, memory loss, and speech issues.

In addition to his testimony, Plaintiff submitted medical bills as evidence of medical expenses resulting from the attack. Through the medical bills and his testimony, Plaintiff has shown that he spent a total of $28,990.99 in medical expenses between treatment at the hospital, physical therapy, and treatment with his family physician for the physical injuries he sustained from the attack.

Plaintiff also received mental health treatment for the emotional and psychological injuries he sustained from the attack. Plaintiff was diagnosed with post-traumatic stress disorder ("PTSD"), depression, and survivor's guilt. Plaintiff continues to see a counselor, who has indicated that Plaintiff should continue with therapy twice a month for the remainder of his life, which Plaintiff has sufficiently shown to be estimated at thirty-six years. Through his testimony and medical bills, Plaintiff has shown that he paid $1,422.16 for past counseling and that his expected future therapy costs are $187,200. Plaintiff's total therapy costs are therefore estimated at $188,622.16.

Accordingly, Plaintiff's particularized past and future medical expenses total $217,613.15. In addition, Plaintiff testified that he would like to get future medical treatment for both his left arm paresthesia and his headaches. Although Plaintiff testified that he believed $100,000 in future medical expenses was a low estimate, he provided no specifics regarding the medical treatment he anticipates receiving for those injuries or the cost of such treatment. The Court therefore finds Plaintiff has failed to establish future medical expenses other than continued therapy.

In sum, the Court awards $217,613.15 in past and future medical expenses.

### b. Pain and Suffering/Disability and Disfigurement

Plaintiff testified that his left arm, which was crushed during the attack, was extremely painful for the first two years after the attack. Specifically, Plaintiff

described experiencing a painful burn along with a sharp, stabbing pain in his left forearm that sometimes radiated up his entire left arm. Plaintiff still feels the burning pain and numbness in his left arm as it is constantly attempting to regenerate nerves, and he has adapted to the pain by relying more on the use of his right arm.

Plaintiff also suffered pain from his knee injury, although he has regained approximately 85–90% of his use of the left knee. Still, Plaintiff occasionally experiences sharp pains in his left knee.

Plaintiff also experienced and continues to experience throbbing headaches. Immediately after the attack, the headaches lasted continuously for weeks, and he suffered approximately fifteen headaches per month. Plaintiff still suffers from approximately ten headaches per month, and each one can last several days. The headaches are manageable with approximately six Ibuprofen, however.

Additionally, Plaintiff sometimes experiences fatigue as well as pain in the right side of his body due to having compensated for the left-side injuries by increasing the use of his right limbs.

Although Plaintiff's arm and knee have reached maximum medical improvement, Plaintiff credibly testified that they, and his headaches, continue to cause him pain and suffering and that the pain and suffering is not expected to resolve. The Court concludes therefore that Plaintiff should be compensated for

both past and future pain and suffering and finds that $500,000 is a reasonable award for the pain and suffering he endured and continues to endure.

Although Plaintiff testified that he has scars on his head and arm, the Court finds the award for pain and suffering adequately compensates Plaintiff for any disfigurement and encompasses the continued disabilities caused by the injuries. The Court therefore will not award a separate amount of damages for disability and disfigurement.

**c. Emotional Distress/Loss of Normal Life**

Plaintiff testified that, before the attack, he was a happy and healthy father, employee, husband, and community member. He found joy and fulfillment in his work, family, and community involvement, which focused on helping those of lesser means.

In addition to the fatigue, arm and knee pain, and continued headaches, however, the attack caused many emotional and mental health issues for Plaintiff. These emotional and mental health injuries have resulted in extreme emotional distress which has prohibited Plaintiff from living a normal life.

For instance, as a result of the attack, Plaintiff suffers from sensory overload, especially to loud noises, anger issues in response to loud noises or confusion, issues with multitasking, frequent bursts of despair, PTSD, major depressive disorder, post-concussion syndrome, traumatic brain injury, paranoia, and survivor's guilt.

Immediately after the attack, Plaintiff was so distressed and paranoid that white supremacists would find him in the hospital that he begged the doctors to allow him to discharge the next day. He and his family faced death threats, and simple noises made Plaintiff fear that someone was coming for him. He continues to live with constant distress, anxiety, and fear. He is reminded of the trauma even when a car passes by when he is in-bed attempting to sleep.

Moreover, Plaintiff separated from his wife of thirteen years less than a year after the attack and now sees his daughter a few times a month. He struggled with anger issues and lashing out at his daughter after the attack, which he did not do prior to the attack, and the medical bills from the attack caused stress between him and his wife. Plaintiff also now has trouble trusting strangers and lives an isolated life away from the people he cares about.

In addition, Plaintiff can no longer exercise because of the pain and swelling in his left arm, and physical activity related to his work results in chronic fatigue. Plaintiff now has trouble concentrating, has memory issues and speech impediments, and struggles with reading.

In addition, Plaintiff suffered from and continues to suffer from "survivor's guilt," a mental condition that occurs when a person believes they have done something wrong by surviving a traumatic or tragic event when others did not, often feeling self-guilt. Plaintiff agonized over whether he contributed to or caused the death of Heather Heyer and will live the rest of his life with the vivid image of her death.

The emotional toll this senseless attack has taken on Plaintiff is extreme. It has impacted virtually every aspect of Plaintiff's daily life, and he deserves to be compensated for the harm. Although Plaintiff requested separate damage awards for loss of normal life and emotional distress, the damages caused by emotional distress and loss of normal life are intertwined and overlapping to such a degree that it is difficult to parse out which effects fall into which category. Rather, the Court finds it appropriate to award a lump sum of $1,000,000 for the emotional distress and loss of normal life the attack has caused.

### d. Punitive Damages

Plaintiff's Complaint sufficiently alleges that Defendant's conduct was wanton and willful, and punitive damages in the amount of $350,000.00 are warranted.

### e. Lost Wages and Benefits

The Court credits Plaintiff's testimony that he has already incurred lost wages in the amount of $16,848 and will continue to incur damages in the amount of $10,000.00 of lost wages a year for the expected duration of his life as a result of the physical and emotional injuries he suffered in the attack.

Plaintiff testified that, before the attack, he worked for a local Athens, Ohio thrift store for forty hours a week at an hourly rate of $8.10 an hour. After the attack, and after receiving multiple death threats, Plaintiff moved away from Athens County out of fear for his and his family's safety. As a result of the depression and suicidal ideation he experienced due to post traumatic stress disorder, Plaintiff was unable to find replacement employment and was out of

work for approximately one year. A lost year of wages at $8.10 an hour, for forty hours a week, for fifty-two weeks a year amounts to $16,848 in lost wages.

Additionally, Plaintiff testified that, as a result of the attack and his continued suffering from PTSD and TBI, Plaintiff is unable to maintain concentration and stay on task at work. His injuries prevent him from working full-time, and the Court credits his estimation that he will lose $10,000 per year for the remainder of his life expectancy in lost wages. This amounts to $360,000 in expected lost wages for a total award of $376,848 for lost wages.

In total, the Court finds Defendant liable to Plaintiff in the amount of $2,444,461.15. The Clerk shall enter default judgment for that amount in favor of Plaintiff and against Defendant and terminate this case.

**IT IS SO ORDERED.**

_/s/ Michael H. Watson_
**MICHAEL H. WATSON, JUDGE
UNITED STATES DISTRICT COURT**